**The People of the State of Illinois, Plaintiff-Appellee, v. William Mathis, Defendant-Appellant.**

Gen. No. 66–22.

Third District.

April 14, 1967.

Jack A. Brunnenmeyer, of Peoria, for appellant.

George R. Kennedy, State's Attorney, of Peoria, for appellee.

STOUDER, P. J.

Defendant, William Mathis, was found guilty by a jury of the offense of murder. Judgment of conviction was entered by the Circuit Court of Peoria County and the Defendant was sentenced to the Illinois Penitentiary for a term of from 35 to 50 years.

Defendant, in seeking a reversal of his conviction, contends first that his conviction was based on incompetent prejudicial testimony, second that error occurred in the giving and refusing of instructions and third that

the evidence is insufficient to sustain the jury's conclusion that he was guilty beyond a reasonable doubt.

Defendant spent the evening of August 20, 1965, visiting taverns with his friends. After leaving his friends he went to the home of his girl friend. After leaving her home he encountered Alleane Ceaser who lived nearby and an argument ensued. During the argument Alleane Ceaser's daughter called the police. The police arrived but did not stay since Defendant had already left the premises. What transpired after Defendant left the premises is substantially in dispute. Defendant testified that he went to his apartment about two blocks away and then to a store accompanied by two other residents of his apartment building. He was arrested upon his return to the apartment building, offered no resistance and cooperated with the arresting officers. According to other witnesses, Defendant returned to the scene of the argument where he shot and killed Alleane Ceaser.

With respect to Defendant's contention that his conviction is based on incompetent prejudicial testimony it appears from the record that about three hours after the offense occurred, the assistant state's attorney questioned Robert McKinley under oath, his statement being recorded by a court reporter. McKinley, after stating that he had seen Defendant immediately after the shooting, was asked whether he saw a gun in Defendant's hand. McKinley's response was "yes, I could say it was a gun but I didn't actually see no gun, I couldn't say." At the trial McKinley testified that he saw a gun in the Defendant's hand and described it as black with brown handles, being the same description as that of a revolver introduced into evidence. The pretrial statement of the witness McKinley was presented to and considered by the jury together with his testimony given at the trial.

Defendant insists that in view of witness Mc-Kinley's pretrial statement his testimony given at the trial constitutes perjury and hence is incompetent. We do not agree with this contention of Defendant. We are not aware of any rule whereby contradictory or inconsistent statements of a witness whether made during the course of a trial or otherwise, thereby render the testimony incompetent. The pretrial statement of McKinley was contrary to his testimony given at the trial and was properly introduced for the purpose of impeachment as was the testimony that McKinley had previously been convicted of a felony. Evidence which tends to impeach the testimony of a witness affects the credibility of the witness and not his competence to testify. That impeachment of a witness does not affect competence is illustrated by those cases wherein motions for a new trial based on newly discovered evidence tending to impeach a witness have been denied. People v. Johnson, 286 Ill 108, 121 NE 246. Both the complained of testimony and the impeaching statement were presented to the jury and it was the duty of the jury to assess the credibility of the testimony considering both its contradictions and its reasonableness in relation to all other evidence presented.

This brings us to Defendant's next assignment of error, namely that the evidence is insufficient to support the jury's verdict. Witness McKinley testified that he was sitting on the porch next to the house wherein the death occurred. He heard the original argument, saw the Defendant leave, saw the police arrive and leave, heard three shots and immediately thereafter saw the Defendant walking on the sidewalk with a gun in his hand and had a brief conversation with him. As is indicated in the foregoing paragraphs, McKinley's testimony concerning the gun in the Defendant's hand is impeached to some extent and his testimony standing alone would

not support the verdict. However other witnesses heard and saw the first argument and two witnesses other than McKinley testified concerning Defendant's presence at the scene of the offense at or about the time of its occurrence. One of the witnesses who was well acquainted with Defendant testified that he saw Defendant on the sidewalk in front of the house of Alleane Ceaser and that he heard three shots fired and saw flashes at Defendant's side. The witness did not, however, see at whom or at what Defendant was shooting. Upon a search of Defendant's apartment, made with his consent, police officers discovered a revolver in a bag containing dirty clothes. Two ballistics experts testified and each expressed the opinion, based on comparison tests, that the fatal bullet was fired from the revolver found in the Defendant's apartment. Another witness testified that he had seen a revolver in Defendant's possession an hour and one half before the occurrence. Defendant, while admitting his argument with deceased, denied he returned to the scene of the occurrence and presented evidence in support of his contention that he was elsewhere at the time of the offense. Defendant denied ownership or any knowledge of the revolver.

■ ■ Defendant argues that there are inconsistencies in the testimony of the witnesses. The testimony of the witnesses does reveal inconsistencies or inaccuracies concerning such facts as to whether the door of the Ceaser house was open or closed at particular times as well as some conflict as to who was present at various times. However in examining such testimony we do not find that it is inherently improbable or palpably erroneous and the argument of Defendant is primarily one of credibility of the witnesses the resolution of which is primarily the province of the jury. Conflicting inferences could be drawn from the evidence offered in support of the defense of alibi since the time periods

177

were narrow and not possible of precise determination. Considering the record as a whole we believe that the conclusion of the jury was amply supported by the evidence.

■ Defendant contends that his instruction Number 15 was improperly refused. In substance, Defendant's instruction 15 is an alibi instruction and is similar to Defendant's instruction number 11 except that it includes not only Defendant's presence at the scene of the offense but also Defendant's participation in the offense. We do not believe that Defendant's admitted presence at the scene of the offense at some time prior thereto furnishes any basis for concluding that any prejudice resulted to Defendant for failure to give an instruction at his request including both the elements of presence and participation. All theories of defense were adequately presented by the instructions. Although other errors in instructing the jury are urged by Defendant they have no merit and we do not believe they require discussion.

For the foregoing reasons the judgment of the Circuit Court of Peoria County is affirmed.

Judgment affirmed.

ALLOY and CORYN, JJ., concur.